**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| WENDY WEIR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-1927 |
| | § | |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

## PRELIMINARY STATEMENT

1. Plaintiff WENDY WEIR, hereinafter referred to as "Plaintiff," brings this ERISA action against The Lincoln National Life Insurance Company Group Welfare Benefits Plan, in its capacity as Administrator of the Texas Spine and Joint Hospital, Ltd. Long Term Disability Plan, hereinafter referred to as "Defendant". Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant. Plaintiff is covered under the policy by virtue of her employment with Baylor Scott and White Texas Spine and Joint Hospital.

## PARTIES

2. Plaintiff is a citizen and resident of Kilgore, Texas.

3. Defendant is a properly organized business entity doing business in the State of Texas.

4. The disability plan at issue in the case at bar was funded and administered by Defendant.

5. Defendant is a business entity doing business in the Southern District of Texas. Defendant may be served with process by serving its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

6. This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question. Specifically, Plaintiff brings this action to enforce her rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7. Venue in the Southern District of Texas is proper by virtue of Defendant doing business in the Southern District of Texas. Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*) "District courts within the Fifth

Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979*).* See *Sanders v. State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993). The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant. *Varsic*, 607 F.2d at 248." See *Frost v. ReliOn, Inc*., 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007). Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States. See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan,* 97 F.3d 822, 825-26 (5th Cir. 1996), citing *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir. 1994). Here, Defendant is "found" within the Southern District of Texas, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

**CONTRACTUAL AND FIDUCIARY RELATIONSHIP**

8. At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. 000010200833.

9. Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Baylor Scott and White Texas Spine and Joint Hospital, with coverage beginning on January 1, 2015.

10. Said policy became effective January 1, 2015.

11. At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

12. At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13. Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14. Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

15. Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. 000010200833 issued by Defendant.

16. Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17. Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18. Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

**STANDARD OF REVIEW**

19. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan

Administrator "discretion" to make said decisions within the plain language in the Plan.

20. Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review. _*Firestone Tire & Rubber Co. v. Bruch*_, 489 U.S. 101 (1989).

21. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22. Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23. Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24. When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ*., 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co*., 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co*., CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

25. Defendant committed the following violations demonstrating its failure

furnish a full and provide review:

i. Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
ii. Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);
iii. Failure to follow Defendant's own claims procedures 29 C.F.R. § 2560.503-1(b);
iv. Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);
v. Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);
vi. Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);
vii. Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);
viii. Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);
ix. Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);
x. Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);
xi. Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);
xii. Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);
xiii. Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

26. Defendant's violations of the regulations were not inadvertent or harmless.

27. Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

28. Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

29. In Texas, for disability insurance policies, certificates or riders offered, issued, renewed or delivered on or after February 1, 2011 said "discretionary clauses"

are prohibited under 1701.062(a) Texas Insurance Code.

30. Further, for disability insurance policies issued prior to February 1, 2011 that do not contain a renewal date, said discretionary clause prohibition applies after June 1, 2011 upon any rate increase or any change, modification or amendments on or after June 1, 2011.

31. Plaintiff contends that the Plan fails to give the Defendant said discretion as said discretionary language is prohibited under 1701.062(a) Texas Insurance Code.

32. Pursuant to *Ariana M. v. Humana Health Plan of Texas*, 884 F.3d. 246, 249 (5th Cir. 2018), (overruling *Pierre v. Conn. Gen. Life Ins. Co*., F2d. 1562 (5th Cir. 1991), the 5th Circuit has recently held that absent a valid grant of discretion, both the “interpretation of plan language” and “factual determinations” are to be reviewed by the court under a de novo standard. Therefore, pursuant to *Ariana*, the court should review this matter de novo.

33. ERISA does not preempt state bans on discretionary clauses because of the “savings clause.” ERISA preempts “any and all State laws insofar as they … relate to any employee benefit plan.” The “savings clause,” however, preserves “any law … which regulates insurance…”. To fall within the savings clause, a state law must: Be “specifically directed toward entities engaged in insurance” and “substantially affect the risk pooling arrangement between the insurer and the insured.” *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

34. Defendant’s discretionary ban is therefore not preempted by ERISA and the Standard of Review for the Court in reviewing this action is de novo.

## ADMINISTRATIVE APPEAL

34. Plaintiff is a 57-year-old woman previously employed by Baylor Scott and White Texas Spine and Joint Hospital as an “HIM Director/Compliance Officer.”

35. HIM Director/Compliance Officer is classified under the Dictionary of Occupational Titles as having a Light exertional level. This occupation also has an SVP of 8 and is highly skilled work.

36. This occupation was very demanding in that it required Plaintiff to to establish and monitor productivity/quality standards to ensure compliance with coding rules and regulations, also supports Compliance Officer.

37. Due to Plaintiff’s disabling conditions, Plaintiff ceased actively working on February 22, 2019.

38. Plaintiff alleges that she became disabled on February 23, 2019.

39. Plaintiff filed for short term disability benefits with Defendant.

40. Short term disability benefits were approved and paid from February 20, 2019 to May 24, 2019.

41. Plaintiff filed for long term disability benefits through the Plan administered by the Defendant.

42. The Plan defines “Disability” or “Disabled” as follows:

> *“Disability” or “Disabled” means Total Disability or Partial Disability.*
> *1. During the Elimination Period and Own Occupation Period, it means that due to an injury or sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.*
> *2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.”*

43. The Plan defines "Own Occupation" or "Regular Occupation" as follows:

*"Own Occupation" or "Regular Occupation" means the occupation, trade or profession:*
*1. in which the Insured Employee was employed with the Employer prior to Disability; and*
*2. which was his or her main source of earned income prior to Disability. It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary f Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:*
*1. whether such work is with the Employer, with some other firm, or on a self-employed basis; or*
*2. whether a suitable opening is currently available with the Employer or in the local labor market.*

44. Long Term Disability benefits were approved from May 24, 2019 to Jay 24, 2021.

45. The Plan provides for monthly benefits of $4,701.99.

46. On October 10, 2019, January 12, 2021, and June 25, 2021, Defendant terminated Plaintiff's long term disability benefits.

47. Defendant's termination letters said Plaintiff was no longer disabled as of 5/24/2021 under the Any Occupation definition and allowed Plaintiff 180 days to appeal this decision.

48. Defendant's termination letters failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of her own or any occupation related to her medical conditions.

49. Defendant's termination letters failed to state what specific information was missing and/or necessary for Plaintiff to perfect her appeal. On this front, Defendant's letter states only that, "If there is additional information, documents, or records that you believe would impact this benefit decision please submit it to us for

consideration."

50. On January 19, 2021 and December 10, 2021, Plaintiff pursued her administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

51. Plaintiff timely perfected her administrative appeals pursuant to the Plan by sending letter requesting same to the Defendant.

52. Plaintiff submitted additional information including medical records to show that she is totally disabled from the performance of both her own and any other occupation as defined by the terms of the Plan.

53. On or about November 4, 2020, Defendant's internal consultant, Jessica Greene, MS, CRC (Ms. Greene), vocational rehabilitation counselor, performed a paper review of Plaintiff's claim file.

54. On or about December 18, 2020, Defendant's paid consultant, Robert Swotinsky, M.D., occupational medicine, performed a peer review of Plaintiff's claim file.

55. On or about January 4, 2021, Defendant's internal consultant, Tracie Grumet, MA, CRC, vocational rehabilitation counselor, performed a paper review of Plaintiff's claim file.

56. On or about April 21, 2021, Defendant's paid consultant, Hunter Vincent, DO (Dr. Vincent), physical medicine and rehabilitation and pain medicine, performed a peer review of Plaintiff's claim file.

57. On or about April 28, 2021, Defendant's internal consultant, Ms. Greene, performed another paper review of Plaintiff's claim file.

58. On or about May 9, 2021, Defendant's internal consultant, Candra Thomas, MS, LPC, CRC, vocational rehabilitation counselor, performed a paper review of Plaintiff's claim file.

59. On or about June 8, 2021, Defendant's paid consultant, Dr. Vincent, prepared an addendum to his peer review of Plaintiff's claim file.

60. On or about October 18, 2021, Defendant's paid consultant, Roger Belcourt, M.D. (Dr. Belcourt), preventive medicine and occupational medicine, performed a peer review of Plaintiff's claim file.

61. On or about October 25, 2021, Defendant's paid consultant, Dr. Belcourt, performed another peer review of Plaintiff's claim file.

62. On or about January 12, 2022, Defendant's paid consultant, Dr. Belcourt, prepared an addendum to his peer reviews of Plaintiff's claim file.

63. Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable as a basis for denial because:

a. The reviewers' opinions were infected by conflict and bias;

b. The reviewers' conclusions lack foundation and are conclusory;

c. The reviewers failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d. The reviewers lacked appropriate qualifications to comment on Plaintiff's conditions;

e. The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f. The reviewers failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g. The reviewers failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

h. The reviewers based their opinions on a summary reports of other underqualified opinions; and

i. The reviewers' conclusions were inconsistent with the weight of the evidence.

64. There is an indication that a "David B., BSN, RN," nurse disability consultant, reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

65. There is an indication that a "Kathleen F., RN, BSN," nurse disability consultant, reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

66. There is an indication that a "Sheridan H., BSN, RN," nurse disability consultant, reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

67. There is an indication that a "Capricia Horton, BSN, RN," nurse disability consultant II, reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

68. Defendant's consultants completed their reports without examining Plaintiff.

69. Defendant notified Plaintiff that Defendant upheld its original decision to terminate Plaintiff's claim for long term disability benefits.

70. Defendant also notified Plaintiff that Plaintiff had exhausted her administrative remedies.

71. Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on her ability to engage in work activities.

72. The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

73. A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

74. More information promotes accurate claims assessment.

75. Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

76. Plaintiff has now exhausted her administrative remedies, and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

77. Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

78. Plaintiff suffers from rheumatoid arthritis; mixed connective tissue disorder (MCTD); fibromyalgia; chronic pain; chronic fatigue; degenerative disc disease (DDD) of the lumbar spine; and shortness of breath (SOB).

79. Treating physicians document continued chronic pain, radicular symptoms, as well as decreased range of motion and weakness.

80. Plaintiff's treating physicians have opined that Plaintiff is unable to work.

81. Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

82. Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed her ability to engage in any form of exertional activity.

83. Physicians have prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address her multiple symptoms.

84. However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

85. Plaintiff's documented pain is so severe that it impairs her ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

86. Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

87. The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

88. As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

89. However, after exhausting her administrative remedies, Defendant persists in denying Plaintiff her rightfully owed disability benefits.

**DEFENDANT'S CONFLICT OF INTEREST**

90. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

91. Defendant's determination was influenced by its conflict of interest.

92. Defendant's reviewing experts are not impartial.

93. Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

94. Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

95. Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

96. Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

97. Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

**COUNT I:**

**WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132**

98. Plaintiff incorporates those allegations contained in paragraphs 1 through 97 as though set forth at length herein.

99. Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

a. Plaintiff is totally disabled, in that she cannot perform the material duties of her own occupation, and she cannot perform the material duties of any other occupation which her medical condition, education, training, or experience would reasonably allow;

b. Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

c. Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

d. Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

**COUNT II: ATTORNEY FEES AND COSTS**

100. Plaintiff repeats and realleges the allegations of paragraphs 1 through 99 above.

101. By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees. Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to

Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A. Grant Plaintiff declaratory relief, finding that she is entitled to all past due long term disability benefits yet unpaid;

B. Order Defendant to pay past due long term disability benefits retroactive to May 25, 2021 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C. Order Defendant to remand claim for future administrative review and continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D. Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E. For such other relief as may be deemed just and proper by the Court.

Dated: Houston, Texas
June 13, 2022

Respectfully submitted,

MARC WHITEHEAD & ASSOCIATES,
ATTORNEYS AT LAW L.L.P.

By: /s/ J. Anthony Vessel
J. Anthony Vessel
Tex. Bar. No. 24084019
Fed. I.D. No. 1692384
anthony@marcwhitehead.com

Marc S. Whitehead
Tex. Bar No. 00785238
Fed. I.D. No. 15465
marc@marcwhitehead.com
Britney Anne Heath McDonald
Tex. Bar. No. 24083158
Fed. I.D. No. 2621983
britney@marcwhitehead.com
Madison Tate Donaldson
Tex. Bar No. 24105812
Fed. I.D. No. 3151467
madison@marcwhitehead.com
Selina Valdez
Tex. Bar No. 24121872
Fed. I.D. No. 3633062
selina@marcwhitehead.com
403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
Facsimile: 713-225-0940
ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
WENDY WEIR